# EXHIBIT A

# Case Docket Entries

CC-20-2025-C-1378

| Court: | **Circuit** | County: | **20 - Kanawha** | Created Date: | **11/18/2025** | Security Level: **Public** |
|---|---|---|---|---|---|---|
| Judge: | **Maryclaire Akers** | Case Type: **Civil** | | Case Sub-Type: **Other** | | Status: **Open** |

Related Cases:

Style: **Elmwood Missionary Baptist Church v. Church Mutual Insurance Company, S.I. c/o Corporation Service Company**

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 11/18/2025 2:56:13 PM<br>1-1 11/18/2025<br>1-2 11/18/2025<br>1-3 11/18/2025<br>1-4 11/18/2025 | E-Filed<br>Civil Case Information Statement<br>Complaint - Complaint<br>Transmittal<br>Summons | | Complaint |
| 2 | 11/18/2025 2:56:13 PM | Judge Assigned | J-20014 | Maryclaire Akers |
| 3 | 11/18/2025 2:56:13 PM | Party Added | P-001 | Elmwood Missionary Baptist Church |
| 4 | 11/18/2025 2:56:13 PM | Party Added | D-001 | Church Mutual Insurance Company, S.I. c/o Corporation Service Company |
| 5 | 11/18/2025 2:56:13 PM | Party Added | D-002 | Mitchell Kies |
| 6 | 11/18/2025 2:56:13 PM | Attorney Listed | P-001 | A-2022 - Brent K. Kesner |
| 7 | 11/18/2025 2:56:13 PM | Service Requested | D-001 | Filer - Secretary of State |
| 8 | 11/18/2025 2:56:13 PM | Service Requested | D-002 | Filer - Secretary of State |
| 9 | 11/19/2025 8:18:14 AM | Attorney Listed | P-001 | A-12944 - Anthony Edward Nortz |
| 10 | 11/19/2025 8:18:26 AM | Attorney Listed | P-001 | A-13642 - Kevin Charles Kidd |
| 11 | 12/2/2025 3:01:56 PM<br><br>11-1 12/2/2025<br>11-2 12/2/2025 | E-Docketed<br><br>Supporting Document - Acceptance of Service by Secretary of State as to Mitchell Kies<br>Transmittal | | Supporting Documents - Acceptance of Service by Secretary of State as to Mitchell Kies |
| 12 | 12/2/2025 3:13:45 PM<br><br>12-1 12/2/2025<br><br>12-2 12/2/2025 | E-Docketed<br><br>Supporting Document - Acceptance of Service by Secretary of State as to Church Mutual Insurance Company, S.I.<br>Transmittal | | Supporting Documents - Acceptance of Service by Secretary of State as to Church Mutual Insurance Company, S.I. |

E-FILED | 11/18/2025 2:56 PM
CC-20-2025-C-1378
Kanawha County Circuit Clerk
Cathy S. Gatson

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**ELMWOOD MISSIONARY**
**BAPTIST CHURCH,**

**Plaintiff,**

                                           **Civil Action No.**

**v.**                                      **Honorable**

**CHURCH MUTUAL INSURANCE**
**COMPANY, S.I. AND MITCHELL KIES**

    **Defendants.**

### COMPLAINT

      **COMES NOW** the Plaintiff, Elmwood Missionary Baptist Church ("Plaintiff Church"), which for its *Complaint* against Defendants, Church Mutual Insurance Company, S.I. ("CMIC") and Mitchell Kies ("Defendant Kies") (referred to collectively as the "CMIC Defendants") states as follows:

### COMMON ALLEGATIONS

      1.    At all times relevant to this *Complaint*, Plaintiff Church was the owner of a church and connected multipurpose recreational building located at 1900 Martha Road, Barboursville, WV 25504 ("the Insured Property"). The Insured Property is also referred to as "3045 Martha Road, Barboursville, WV 25504" due to an address restructuring by local 911 and emergency services.

      2.    Defendant CMIC is a foreign corporation with its principal place of business at 3000 Schuster Lane, Merrill, WI 54452, licensed to do business and actively engaged in the business of insurance in the State of West Virginia, including in Kanawha County, West Virginia.

3.      Upon information and belief, Defendant Kies is, and all times relevant hereto has been, an employee of Defendant CMIC, who resides in the State of Texas and is, upon information and belief, licensed as an insurance adjustor in West Virginia, and/or engaged in the business of insurance in West Virginia, including in Kanawha County, West Virginia.

4.      Inasmuch as Defendant Kies was an employee and agent of Defendant Church Mutual Insurance Company at all times relevant to the acts and omissions addressed by this *Complaint*, Defendant CMIC is chargeable with his respective conduct under the legal and equitable doctrines of vicarious liability, including, but not limited to the doctrines of employer/employee, master/servant, principle/agent, non-delegable duty, respondeat superior, and/or insurance regulatory law.

5.      At all relevant times, the CMIC Defendants were engaged in the business of insurance in the State of West Virginia, as defined by Chapter 33 of the West Virginia Code, and are, therefore, subject to the laws and the Rules and Regulations of West Virginia.

6.      Pursuant to W.Va. Code § 56-1-1(a)(1), jurisdiction and venue are proper in the Circuit Court of Kanawha County, West Virginia, inasmuch as the CMIC Defendants do business in Kanawha County, West Virginia.

## FACTS

7.      At all relevant times, Defendant CMIC had in force and effect a commercial insurance policy contract identified as Policy No. 0092320-25-647557 ("the CMIC Policy") issued to Plaintiff Church, for the Insured Property.

8.      The Insured Property includes a Church and a Multipurpose Building, utilized as a gymnasium, kitchen, recreational area, classroom site, and social gathering location.

9.    The Insured Property's Multipurpose Building is located directly next to Martha Elementary School where various small children attend, and the Insured Property's Multipurpose Building supports the community and the Church congregation alike.

10.    Under the CMIC Policy, Plaintiff had Blanket Building and Personal Property Coverage of $6,143,950.00 for two buildings, Church & Multipurpose Building and Fellowship Hall, with full included limits replacing the entire value of the covered damages to the Building and Personal Property.

11.    The CMIC Policy provides a stated value of coverage for the Church and Multipurpose Building that includes Building limits of $4,679,116.00 and Personal Property limits of $702,197.00.

12.    All premiums were paid as due for the CMIC Policy and Plaintiff complied with all of the other material terms, conditions, and requirements of the CMIC Policy.

13.    For the five years prior to the date of loss, Plaintiff knew of no structural damage to the Insured Property, and it performed basic maintenance to the Insured Property as necessary.

14.    On or about August 14, 2024, the roof of the Insured Property collapsed ("the Property Loss").

15.    As a direct and proximate result of the Property Loss at the Insured Property, Plaintiff's Multipurpose Building and related personal property were severely damaged and/or destroyed.

16.    The damage at the Insured Property caused by the Property Loss was so severe, and degraded the structure and foundation to such an extent, that no reasonable person would use any remaining structure to rebuild the Multipurpose Building portion of the Insured Property, a critical piece of Plaintiff's property and purpose.

17.     The cost to repair the damages to the Insured Property as a result of the Property Loss is within the coverage afforded by the CMIC Policy limits.

18.     Under the terms of the CMIC Policy and the laws of West Virginia, CMIC is obligated to pay for the full cost to repair or replace the damage to the Insured Property and to Plaintiff's personal property resulting from the Property Loss of August 14, 2024.

19.     Following the Property Loss, Plaintiff provided CMIC with timely notification of the Property Loss and of Plaintiff's claim for damages on or about August 15, 2024.

20.     Upon information and belief, Defendant CMIC assigned the Plaintiff's claim arising from the Property Loss to Defendant Kies for investigation and handling on or about August 16, 2024.

21.     Around this time period, Plaintiff was first informed by Defendant Kies verbally that the claim and Property Loss was not covered under the CMIC Policy for the roof collapse.

22.     Defendant Kies contacted Plaintiff by letter, dated August 16, 2024, notifying Plaintiff that CMIC would be investigating the Property Loss and claim and that CMIC engaged RMC Group, a building consulting firm, to provide an itemized repair proposal and EFI Global, an engineering firm, to investigate causation of the Property Loss damages.

23.     Further, Defendant Kies advised that a property inspection of the Insured Property Multipurpose Building was required and would occur on or about August 21, 2024.

24.     On or about August 21, 2024, Defendant CMIC's property inspection of the Insured Property Multipurpose Building was completed by EFI Global and engineer Harry Brumley ("Brumley").

25.     During the inspection, the Insured Property was found by EFI Global and Brumley to be severely damaged because the roof collapsed inward and downward, the gable walls fell

outward on each end, the exterior walls sustained damage at the truss bearing, the roof trusses over

the kitchen area were damaged and collapsed by the weight of the brick veneer on the east gable,

and the trusses generally failed in the central portion of the truss under the piggy back trusses.

26.    However, EFI Global and Brumley relayed that they could not properly perform

the causation investigation because the piggyback trusses were in the way and the lower trusses

were not exposed to be reviewed. In particular, the configuration of the trusses under the piggyback

trusses could not be determined due to the amount of debris and the piggyback trusses covering

the area.

27.    EFI Global and Brumley believed that the trusses failed at the Insured Property

causing the roof collapse and that lower truss access and review would give them a better idea of

what caused the trusses to be compromised and the roof to collapse.

28.    Based upon the inspection performed on August 21, 2024, Defendant CMIC

prepared and submitted an estimate on August 26, 2024, noting the replacement cost amount of

$801,981.20 for the damages to the Insured Property and confirming coverage under the CMIC

Policy.

29.    Defendant CMIC's estimate subtracted $75,968.64 of "depreciation" to get to a net

claim amount of $725,012.56 to be payable to Plaintiff Church for the Property Loss per CMIC's

interpretation of the CMIC Policy.

30.    In emails dated August 28, 2024, and August 29, 2024, Defendant Kies

acknowledged that "the trusses on the ends of the building were badly damaged, so removal and

inspection of the middle 1/3 would be best." Brumley of EFI agreed.

31.    On September 10, 2024, Plaintiff Church received a letter from Defendant Kies

providing an update on the claims for the Property Loss. Defendant Kies stated that Defendant

CMIC's investigation was ongoing, that EFI Global and Brumley needed to inspect the bottom cord of the trusses to determine causation of the damages from the Property Loss, and agreed to a payment of $5,000.00 to a local demolition vendor to solely remove the piggyback trusses and expose the lower trusses that EFI Global needed to see.

32.    Plaintiff Church, overwhelmed by the Property Loss and Defendants' complicated property damage and repair requirement analysis and property coverage determination, sought the assistance of public adjuster Metro Public Adjustment, Inc. and representative Steven Smith ("Smith") on or about September 18, 2024, to assist with its claims and communications with Defendant CMIC.

33.    Smith reached out to Defendant Kies on September 19, 2024, informed Defendant CMIC of his involvement for Plaintiff Church and desired to move Defendant CMIC's investigative demolition plan forward.

34.    Around this same time period, Smith and Metro Public Adjustment, Inc. inspected the Insured Property, analyzed the Property Loss damages, and prepared a detailed estimate to rebuild the Insured Property Multipurpose Building and replace the personal property damaged due to the Property Loss in the amount of $2,110,028.74.

35.    Smith contacted the CMIC Defendants on September 23, 2024, addressing the Plaintiff's claim, necessary investigative demolition of the Insured Property, and the estimate previously submitted.

36.    Smith received confirmation from the CMIC Defendants that they would be sending out a demolition vendor to inspect the Insured Property on September 24, 2024, for the purpose of determining pricing options for demolition necessary to complete the inspection requested by Defendant CMIC.

37.     On September 26, 2024, Defendant Kies confirmed that Defendant CMIC chose a cheaper investigative approach by obtaining a demolition vendor to focus solely on moving the piggyback trusses in the Insured Property to determine the causation of the truss collapse at the Insured Property.

38.     The second inspection with Defendant CMIC's demolition vendor occurred at the Insured Property on October 7, 2024, with Defendant Kies, Smith and Brumley present. During the inspection, the CMIC Defendants and Brumley were able to obtain access to the lower trusses to finish his causation investigation.

39.     While waiting on EFI Global and Brumley's engineering report, Solid Ground Engineering and Inspections, Inc. and Mr. Gray ("Gray"), on behalf of the Plaintiff, inspected the Insured Property on October 15, 2024.

40.     Smith followed up with the CMIC Defendants on October 25, 2024, for a status update on the claim in light of the October 7, 2024 inspection. Defendant Kies responded on October 28, 2024, noting that Brumley expected to have his engineering report finished soon.

41.     After not receiving any further communications after November 1, 2024, Smith followed up with Defendant Kies and sent a letter on November 12, 2024.

42.     After not hearing from CMIC over a month after the second inspection and review, Smith sent a letter to Defendant Kies on November 26, 2024, demanding coverage under the CMIC Policy for the complete demolition and reconstruction of the Insured Property Multipurpose Building because the structural and repair estimates noted the Insured Property Multipurpose Building experienced over 85% damage.

43.     On December 2, 2024, Defendant Kies responded to Smith with Defendant CMIC's coverage position.

44.    Defendant CMIC provided a partial payment of $788,272.00 to Plaintiff by check dated November 25, 2024, based upon the CMIC Defendants' estimate of August 26, 2024.

45.    The CMIC Defendants' partial payment was clearly insufficient in light of the destruction to the Multipurpose Building and the estimate previously submitted by Smith.

46.    Defendant CMIC's coverage position was based upon the EFI Global and Brumley engineering report but the same was not provided to Plaintiff.

47.    Smith followed up with Defendant Kies and requested a copy of the EFI Global and Brumley engineering report. The engineering report, dated November 11, 2024, was finally provided to Smith and Plaintiff on December 12, 2024.

48.    The EFI Global and Brumley engineering report concluded and stated the following: the walls are relatively plumb and undamaged except for brick veneer damage at the top; the concrete slab was not able to be observed; once the debris is removed the slab can be observed for structural damage; lateral bracing on critical web members W3 and W5 was missing; a W3 web member was found that had old termite damage; the cause of the collapse is consistent with a combination of reduced allowable stresses due to long term dead loads, overstressing of web members W3 and W5 due to omitted lateral bracing, and a W3 web member being weakened by termite damage; and the lack of lateral bracing on web members W3 and W5 caused deflection and buckling over a period of years which led to a sudden failure event.

49.    The EFI Global and Brumley engineering report and attached materials also noted during their investigation that wind speeds of up to 70 miles per hour were recorded at the Insured Property Multipurpose Building location on April 2, 2024, 60 miles per hour on April 16, 2024, and 64 miles per hour on July 14, 2024.

50.     On December 29, 2024, Solid Ground Engineering and Inspections, Inc. and Gray provided their written engineering report regarding the Insured Property and indicated the following: the roof collapse resulted in damage to the lower roofing and walls at the left, front, and right sides of the building; the roof collapse has resulted in shifting and movement at the tall gymnasium walls; it is estimated that more than 80%, by surface area, of the structural components of the building have shifted, moved, cracked or have otherwise been compromised by the roof collapse; the missing roof has exposed the structure to weather and elements since the roof collapse; the collapse has likely compromised the appliances, plumbing, electrical, mechanical, and cosmetic finishes throughout the Insured Property; the re-use of the existing and remaining structural components is not feasible; repairing the existing and remaining structural components is not feasible; and the building should be razed and reconstructed.

51.     Upon review of Solid Ground's report, Plaintiff expressed deep concerns regarding the structural integrity of the Insured Property following the roof collapse and understood the site posed a serious safety risk to both the public and to nearby structures.

52.     Smith contacted Defendant Kies on December 31, 2024, provided Solid Ground Engineering and Inspections, Inc. and Gray's engineering report, Metro Public Adjustment, Inc.'s estimate and a contents inventory list of the personal property damaged in the Property Loss.

53.     On January 6, 2025, the CMIC Defendants responded to Smith and Plaintiff, acknowledged they had received the Metro Public Adjustment, Inc's estimate, contents inventory list, and engineering report from Gray. Defendant Kies noted that Defendant CMIC again engaged EFI Global to analyze the opinions and supporting information presented by Gray's engineering report.

54.     Defendant Kies provided Plaintiff with a supplemental payment of $12,709.20 towards the Multipurpose Building for temporary fencing, rental of two scissor lifts, and tarps to protect the Insured Property's HVAC units from damage.

55.     This supplemental payment increased the CMIC Defendants' Multipurpose Building estimate for the Insured Property to $814,690.40.

56.     Additionally, Defendant Kies reviewed the contents list in the Metro Public Adjustment, Inc.'s estimate, represented the replacement cost of the items to be $17,407.80, and tendered a supplemental payment of only $5,222.34 for the contents after applying "applicable depreciation" of 70%.

57.     By check dated January 6, 2025, Defendant CMIC provided a supplemental partial payment in the amount of $17,931.54 to address the Insured Property Multipurpose Building estimate supplement and the Plaintiff's claim for personal property.

58.     Critically, Defendant Kies represented, "[w]hile the gymnasium's roof collapsed, the structure keeps the general appearance of a building with a flat roof" and the Church "sanctuary section of the structure, which compromises approximately 45% of the building, sustained no damage."

59.     On January 14, 2025, Gray contacted Plaintiff and Smith and informed them that Brumley reached out and relayed that Defendant CMIC had hired him to look over Gray's engineering report and to offer a specific opinion as to "what could be reused" at the Insured Property Multipurpose Building.

60.     Gray advised Plaintiff and Smith that he had informed Brumley that his (Gray's) opinions were based on what he could access and see and what he thought was safe and feasible

to accomplish. Gray stuck by his findings in his engineering report that the Insured Property Multipurpose Building needed to be razed and rebuilt for safety reasons.

61.    Notably, Gray told Brumley that there was no way he could approve of the re-use of the Insured Property Multipurpose Building walls, and Brumley agreed it "would be a big risk at this point" noting a previous recommendation of bracing for the gymnasium walls.

62.    In February of 2025, after considering Gray's professional assessment, the extent of the damage, the anticipated scope of work necessary to return the Insured Property to a code-compliant condition and community and safety issues, Plaintiff determined that razing and rebuilding the Multipurpose Building was necessary.

63.    On January 23, 2025, Smith prepared and sent a letter to the CMIC Defendants requesting an update on the claim.

64.    On February 10, 2025, Defendant Kies sent Smith a letter representing that EFI Global and Brumley reviewed Gray's engineering report and had retorted that complete demolition of the Multipurpose Building appeared to be "overly conservative" and did not take into consideration that certain elements were not impacted by the falling roof trusses and might not be damaged beyond reasonable repair.

65.    Defendant Kies went on to indicate that, based upon EFI Global and Brumley's investigation and analysis, it was reasonable to assume the following structural elements were not damaged or not damaged beyond a reasonable repair by a competent contractor: foundation; floor slab; masonry walls; classroom and hip roof trusses; classroom interior walls; classroom exterior frame walls, windows, and doors; and kitchen exterior frame wall, window, and doors.

66.    The CMIC Defendants reaffirmed their position that the Insured Property structure was repairable but acknowledged that with debris still in place all damages could not be seen and requested photographs of any further damages evident in the slab or walls hidden by debris.

67.    Defendant Kies represented there is no evidence to support the conclusion that items were impacted by insulation and rendered unsalvageable as a result of exposure.

68.    Defendant Kies also relayed that Gray's engineering report indicated that Plaintiff had damage to classrooms at the perimeter of the Insured Property not present at the time of loss and that Plaintiff was instructed to protect the property from further damage by shoring walls, removing the damaged trusses, and moving appliances to other areas of the building despite the CMIC Defendants' failure and refused to provide payment from the CMIC Policy to undertake such actions and meet Defendant CMIC's demands.

69.    Defendant Kies argued that, based upon Gray's engineering report and damages being presented, the Plaintiff allegedly had not complied with their duties after loss under the CMIC Policy.

70.    Despite these alleged positions, the CMIC Defendants provided a supplemental payment of $6,424.45 for damages to the Insured Property.

71.    This supplemental payment increased the CMIC Defendants' building estimate for the Insured Property Multipurpose Building to $821,114.85.

72.    On March 12, 2025, Smith sent a letter explaining that Gray's engineering report supported the position that the Insured Property's walls sustained immediate structural damage as a direct result of the roof collapse and not due to any delay in mitigation work.

73.    After receiving the recommendation of Solid Ground Engineering and Inspections, Inc. and Gray's opinion to raze and reconstruct the building, considering the safety of the

community and nearby school building, and concerned about the young children and families that utilized the Insured Property, Plaintiff decided to have the Insured Property Multipurpose Building demolished in late March of 2025 so the structure could be rebuilt.

74.    Defendant Kies followed up with Smith on April 4, 2025, acknowledged the differing opinions on the Insured Property, and requested a third inspection of the lower portion of the block walls and slab be conducted approximately eight months after the date of loss.

75.    Defendant CMIC had completed two prior inspections and had sufficient opportunity to conduct any debris removal to sufficiently investigate the Plaintiff's claim, and had complained that Plaintiff had delayed mitigation work.

76.    Defendant Kies indicated that Defendant CMIC wanted to see the Insured Property's slab and lower portions of the block wall to determine if the Insured Property Multipurpose Building needed to be knocked down and rebuilt.

77.    By this time, Plaintiff had already razed the Multipurpose Building to protect the safety of Plaintiff's congregation and the community that utilized the Insured Property.

78.    On April 21, 2025, the CMIC Defendants sent a letter to Smith relaying that an additional partial payment of $39,444.91 was being sent for the personal property contents based on photographs and damage assessments that had been provided.

79.    Defendant Kies also noted that Defendant CMIC had decided to again offer payment for the cost to perform limited demolition and clean up of trusses and insultation at the Insured Property and required Plaintiff to notify Defendant CMIC when this work is completed so CMIC could reinspect the Insured Property Multipurpose Building for third time to assess the additional damage.

80.     On April 24, 2025, Smith sent a letter to the CMIC Defendants requesting a response to the estimates for the repair of the Insured Property that were previously provided by Smith, requesting that the Multipurpose Building be considered a separate building from the Church, and requesting that the contents claim for the kitchen appliances be resolved.

81.     On May 1, 2025, Plaintiff received the additional partial payment of $39,444.91 from CMIC for personal property contents.

82.     On May 28, 2025, Smith received a letter from the CMIC Defendants acknowledging the correspondence dated April 24, 2025, and responding to the various requests. Defendant CMIC stated that payment has been tendered for the cost to repair the Multipurpose Building and return it to its pre-loss condition"; Defendant CMIC had reviewed all estimates submitted by Plaintiff, and its coverage position and payments on the Multipurpose Building and personal property contents remained unchanged; and Defendant CMIC assumed the trusses and insultation on the Insured Property were removed by this point in time and again requested a third inspection eight months after the date of loss so Plaintiff and Defendant CMIC "could reach an agreed cost of repair."

83.     On June 13, 2025, July 10, 2025, and July 22, 2025, the CMIC Defendants followed up with Smith regarding the underlying claim and continued to ask for a third inspection of the Insured Property Multipurpose Building to determine additional damages despite being informed of the Multipurpose Building demolition status.

84.     On August 15, 2025, Smith followed up with the CMIC Defendants, noting that his prior letters to the CMIC Defendants had provided notice of the demolition of the Multipurpose Building which Defendant CMIC continued to disregard and ignore when asking about the property status.

85.     Further, Smith pointed out that Defendant CMIC had prior missed inspection opportunities that Defendant CMIC decided not to utilize and, instead, attempted to shift the burden of the inspection to the Plaintiff.

86.     On August 23, 2025, while the Property Loss claim was still in dispute, Defendant CMIC's account manager, Fred Skeen ("Skeen") spoke directly with Plaintiff regarding the Insured Property's status.

87.     Plaintiff's representative, James Hyatt, questioned Skeen as to why Defendant CMIC did not eliminate the cost of the Multipurpose Building at issue from its premium in the renewal as CMIC knew the Multipurpose Building was destroyed and unusable for a year since the Property Loss. Mr. Hyatt further questioned Skeen why CMIC increased the last premium by approximately 40% from the prior year in light of the fact Plaintiff had lost the primary function of the Multipurpose Building over the last year during the claim dispute.

88.     To date, Plaintiff has not received a reasonable explanation or response from Defendant CMIC or Skeen regarding its premium questions.

89.     On August 29, 2025, Defendant Kies reached out to Smith while the West Virginia Office of the Insurance Commissioner was investigating the underlying claim history, and relayed Defendant CMIC still had the same unchanged coverage determination, but was offering $250,000.00 in new money to resolve the Plaintiff's claim.

90.     Plaintiff declined the $250,000.00 in new money offer from the CMIC Defendants and demanded an appraisal pursuant to the requirements of the CMIC Policy through Smith's letter dated September 2, 2025.

91.     On September 3, 2025, Smith made Defendant Kies personally aware of the appraisal demand for the Property Loss claim under the CMIC Policy.

92.     On September 25, 2025, Defendant Kies notified Smith that instead of naming a counter appraiser per the requirements of the CMIC Policy, a federal declaratory action was going to be filed by CMIC's legal counsel and the CMIC Defendants would await the Court's decision.

93.     The total cost to demolish and rebuild the Insured Property Multipurpose Building and replace the Plaintiff's personal property destroyed by the Property Loss is at least $2,110,028.74.

94.     This amount is well within the Plaintiff's Insured Property Building and Personal Property coverage limits provided by the CMIC Policy of $4,679,116.00 and $702,197.00 respectively.

95.     As such, Plaintiff is entitled to payment of at least $2,109,028.74 under the CMIC Policy.

96.     Plaintiff has received $852,072.90 to date for the Insured Property Multipurpose Building and personal property contents coverage from Defendant CMIC but is still owed at least $1,256,955.84 from Defendant CMIC under the CMIC Policy.

97.     The CMIC Defendants failed to conduct a thorough, fair, and objective investigation of Plaintiff's claims and the coverages available to Plaintiff in connection with the Property Loss.

98.     The CMIC Defendants failed to acknowledge and act promptly upon communications from Plaintiff regarding its claims arising from the Property Loss.

99.     Defendant CMIC failed to adopt and implement reasonable standards for the prompt investigation of claims and refused to pay Plaintiff's claims without conducting a reasonable and timely investigation based upon all available information.

100.    Defendant CMIC failed to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim even though Defendant CMIC's liability to Plaintiff was reasonably clear, in violation of W.Va. Code §33-11-4(9)(f).

101.    Defendant CMIC has forced Plaintiff to institute this litigation to recover the amounts due under the CMIC Policy.

102.    Defendant CMIC failed to properly adjust, handle, and timely pay Plaintiff's claim for benefits due and owing under the CMIC Policy, which has caused Plaintiff significant economic and non-economic damages.

### Count I - Declaratory Judgment/Breach of Contract (CMIC)

103.    Plaintiff hereby restates and re-alleges, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 102 of this *Complaint*, as though fully restated and made a part of Count I of this *Complaint*.

104.    At the time of the Property Loss, the Insured Property was insured under the CMIC Policy, which provided a blanket limit of $6,143,950.00, including a stated value for the Church and Multipurpose Building of $4,679,116.00 and $702,197.00 for personal property within the Church and Multipurpose Building.

105.    The CMIC Policy obligated Defendant CMIC to pay the Plaintiff the full cost to repair and replace the Insured Property arising from damage from the Property Loss.

106.    Defendant CMIC failed and refused to pay the Plaintiff the full cost to repair and replace the Insured Property and personal property for damage resulting from the Property Loss.

107.    The CMIC Policy obligated Defendant CMIC to participate in binding appraisal when demanded by Plaintiff.

108.    Defendant CMIC refused to participate in appraisal as required by the CMIC Policy.

109.    Plaintiff, at all relevant times, paid the premiums due to Defendant CMIC and otherwise complied with the terms and conditions of the CMIC Policy.

110.    Defendant CMIC failed to assist Plaintiff in completing its claim and failed to offer and pay the Plaintiff the full amount of damage owed to Plaintiff for the damages to the Insured Property resulting from the Property Loss.

111.    Because the Property Loss and the resulting damage to Plaintiff's real and personal property was a covered cause of loss, Defendant CMIC was obligated to promptly investigate Plaintiff's claims and to pay the insurance benefits owed under the CMIC Policy for the full cost of repairing and replacing the Plaintiff's real and personal property.

112.    Defendant CMIC's refusal to provide necessary first-party assistance to the Plaintiff, its refusal to pay the Plaintiff its applicable insurance benefits, and its refusal to pay the Plaintiff the full amount for its damages resulting from the Property Loss constitute a breach of the CMIC Policy which has proximately caused the Plaintiff to incur continuing economic and non-economic damages.

113.    As a direct and proximate result of Defendant CMIC's breach of the CMIC Policy, the Plaintiff is entitled to recover compensatory damages from Defendant CMIC for its net economic loss, attorney fees, and consequential damages.

### Count II - Common-Law "Bad Faith" (CMIC)

114.    Plaintiff hereby restates and re-alleges, as though fully incorporated into Count II, each and every allegation contained within Paragraphs 1 through 113 of this *Complaint* as though fully restated and made a part of Count II of this *Complaint*.

115.    Through Defendant CMIC's actions described herein and their refusal to provide necessary first-party assistance to the Plaintiff, its refusal to pay the Plaintiff its applicable

insurance benefits, and its refusal to pay the Plaintiff the full amount for its damages resulting from the Property Loss, Defendant CMIC breached its common-law duty of good faith and fair dealing to Plaintiff, such that its conduct amounts to "common-law bad faith."

116.    In particular, through its actions and refusal to pay Plaintiff full benefits under the CMIC policy, Defendant CMIC breached its duty of good faith:

a)    By failing and refusing to conduct an adequate, timely and thorough investigation to determine the policy benefits due and owing to Plaintiff in connection with the Property Loss;

b)    By failing and refusing to conduct an adequate, timely and thorough investigation to determine the damages to Plaintiff's property over a five month period while attempting to force Plaintiff to conduct its own investigation in connection with the Property Loss;

c)    By failing and refusing to communicate to Plaintiff the benefits to which it was entitled under the CMIC Policy;

d)    By ignoring the documentation of damages provided by Plaintiff and failing to pay Plaintiff for the damages documented;

e)    By ignoring the damages observed by Defendant CMIC and their hired representatives during their inspection of the Insured Property and by failing to pay Plaintiff for the damages observed and caused by the Property Loss;

f)    By misrepresenting facts related to the coverage available for Plaintiff's damages under the CMIC Policy;

g)    By failing and refusing to pay applicable policy benefits due to the Plaintiff under the CMIC Policy without a factual or legal basis;

h)    By failing and refusing to timely respond to communications from Plaintiff which reasonably required a response;

i)    By forcing Plaintiff to file this action to force Defendant to abide by the appraisal process set forth in the CMIC Policy;

j)    By forcing Plaintiff to file this action to recover the benefits owed to it under the CMIC Policy; and

k)    By favoring its own interests over the interests of its insured.

117.    As a direct and proximate result of Defendant CMIC's "bad faith" and its breach of its common law duty of good faith and fair dealing, Plaintiff is entitled to recover from Defendant CMIC its economic, non-economic, and consequential damages, including the attorney fees and the costs Plaintiff has incurred and will incur as a result of Defendant CMIC's conduct.

118.    Defendant CMIC's conduct, as described above, was intentional and malicious, intended to benefit Defendant CMIC while causing damage to Plaintiff and, therefore, Plaintiff is entitled to an award of punitive damages against Defendant CMIC.

### Count III - Unfair Trade Practices (CMIC Defendants)

119.    Plaintiff hereby restates and re-alleges, as though fully incorporated into Count III, each and every allegation contained within Paragraphs 1 through 118 of this *Complaint* as though fully restated and made a part of Count III of this *Complaint*.

120.    The CMIC Defendants had adequate notice of Plaintiff's claims, had adequate time to investigate any insurance coverage issues, had adequate time to investigate Plaintiff's damages, and were not in any way prejudiced by the timeliness or lack of timeliness of notification of Plaintiff's claims.

121.    At all times relevant herein, the CMIC Defendants violated W.Va. Code 33-11-4(9)(a) by misrepresenting facts regarding the Property Loss damages to Plaintiff's Insured Property.

122.    At all times relevant herein, the CMIC Defendants violated W.Va. Code 33-11-4(9)(b) by failing and refusing to timely respond to Plaintiff's requests that its claims be paid in full.

123. At all times relevant herein, the CMIC Defendants violated W.Va. Code 33-11-4(9)(b) by failing and refusing to timely respond to Plaintiff's requests for updates relating to the claim.

124. Specifically, the CMIC Defendants failed and refused to timely respond to Plaintiff's representative, Smith, on multiple occasions about the underlying claim within the required period under West Virginia law when the same was mentioned by Smith at the bottom of his correspondences with the CMIC Defendants.

125. Further, the CMIC Defendants failed and refused to sufficiently respond to each item addressed and requested by Smith in his various correspondences relating to the underlying claim and solely focused on its own claim valuation and thought process while ignoring Plaintiff's detailed position and requests.

126. At all times relevant herein, the CMIC Defendants failed and refused to conduct a prompt and reasonable investigation based on all available information, thereby violating applicable consumer protection statutes and regulations.

127. Specifically, the CMIC Defendants failed and refused to promptly to conduct any necessary inspections to determine the amount of damages to the Plaintiff's Insured Property over a five month period, despite knowing and/or believing the inspections were necessary.

128. Further, the CMIC Defendants failed and refused to conduct the necessary debris removal to inspect the Plaintiff's Insured Property despite knowing it was required as indicated by their own experts.

129. Additionally, the CMIC Defendants caused significant delays and did not conduct a reasonable investigation on this claim when they conducted two engineer inspections of the Insured Property Multipurpose Building, complained they could not analyze everything present,

attempted to shift the burden of cost to Plaintiff for the inspection of the loss, utilized a less expensive investigation method when that did not work, had piggyback trusses physically removed to conduct their further investigation, and then requested a third inspection eight months after the date of loss claiming they still had not seen enough of the property to warrant full replacement and provide the full coverage benefits afforded by the CMIC Policy.

130.    At all times relevant herein, the CMIC Defendants refused, delayed, and constructively denied payment of Plaintiff's Property Loss claims without conducting a prompt and reasonable investigation based on all available information, thereby violating applicable consumer protection statutes and regulations.

131.    Specifically, the CMIC Defendants have failed and refused to pay Plaintiff the total amounts owed under the CMIC Policy to repair and replace the Insured Property.

132.    The CMIC Defendants delayed payment for the total amounts owed to Plaintiff relating to the Property Loss despite knowing it was covered under the CMIC Policy.

133.    At all times relevant herein, the CMIC Defendants failed and refused to adopt and/or implement reasonable standards for the prompt investigation of the Plaintiff's claims, and this constitutes a direct violation of applicable consumer protection statutes and regulations.

134.    Specifically, the CMIC Defendants utilized the same engineer twice and asked for his services a second time for the sole purpose of countering Gray's engineer report and findings. Notably, Gray told Plaintiff and Smith that Brumley sought his opinions on whether anything was still usable at the Insured Property Multipurpose Building when Gray had made it clear in his engineering report that the entire building needed to razed and rebuilt. Brumley even admitted to Gray that just repairing the property in its current state was not recommended.

135.    The CMIC Defendant's aforementioned conduct appears to show pressure and/or requests by the CMIC Defendants to Brumley for an engineering analysis supporting Defendant CMIC's claim position instead of his objective findings. This conduct by the CMIC Defendants does not constitute a reasonable investigation and seems to exist for the sole purpose of delaying full value payment of the Property Loss claim to Plaintiff.

136.    At all times relevant herein, the CMIC Defendants failed and refused to acknowledge and act reasonably promptly upon communications with respect to Plaintiff's claim, thereby violating applicable consumer protection statutes and regulations.

137.    The CMIC Defendants failed and refused to timely respond to Plaintiff's notification of claim by failing to provide it with notice of all available coverages and benefits available and due under the CMIC Policy, and by failing to provide Plaintiff with first-party assistance.

138.    At all times relevant herein, the CMIC Defendants failed and refused to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when liability was reasonably clear under the CMIC Policy, in violation of W.Va. Code §33-11-4(9)(f).

139.    The CMIC Defendants failed and refused to timely pay Plaintiff for all damages to the Insured Property related to the Property Loss, despite knowing there was clear coverage under the CMIC Policy.

140.    The CMIC Defendants failed and refused to timely pay Plaintiff months after receiving notice of the Property Loss damages to the Insured Property and being provided estimates and an engineering report related to and supporting the same.

141.    The CMIC Defendants failed and refused to timely pay Plaintiff to this day for the full amount of damages to the Insured Property arising from the Property Loss despite knowing there was no other coverage available from any other source.

142.    Through the CMIC Defendants' delay and refusal to pay the Plaintiff's valid claims and the CMIC Defendants' failure and refusal to promptly and properly investigate the Plaintiff's claims, the CMIC Defendants compelled Plaintiff to retain counsel and to file this action in order to recover the full benefits due Plaintiff under the CMIC Policy, thereby violating applicable consumer protection statutes and regulations, including W. Va. Code §33-11-4(9)(g).

143.    The CMIC Defendants' conduct, as described hereinabove, is part of the CMIC Defendants' general business practice and constitutes unfair claims settlement practices under applicable consumer protection statutes and regulations.

144.    The CMIC Defendants' violations of West Virginia's statutory and regulatory provisions demonstrate a pattern and practice of violating the Unfair Trade Practices Act by the CMIC Defendants, as opposed to an isolated incident.

145.    As a direct and proximate result of the CMIC Defendants' violations of applicable consumer protection statutes, Plaintiff has suffered annoyance, inconvenience, aggravation, emotional distress and other consequential damages, and has been forced to incur attorney fees and the costs associated with pursuing its claims and instituting the present action in order to recover the insurance proceeds owed to it under the CMIC Policy.

146.    This Court has jurisdiction over this action against the CMIC Defendants for their violations of West Virginia's consumer protection statutes and regulations, and Plaintiff is entitled to an award of damages against the CMIC Defendants for Plaintiff's legal fees and costs, net economic losses and other consequential damages.

147. At all times relevant herein, the CMIC Defendants acted with the deliberate and malicious intent to injure and harm Plaintiff, in violation of their duties under the Unfair Trade Practices Act and the West Virginia insurance regulations, all of which has proximately caused continuing economic and non-economic damages to Plaintiff, and all of which warrants and commands an award of punitive damages against the CMIC Defendants.

**WHEREFORE**, Plaintiff demands judgment as follows:

a) A declaratory judgment that Plaintiff's claims arising from the Property Loss are covered by the CMIC policy;

b) An award of compensatory damages against Defendant CMIC in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, arising from Defendant CMIC's breach of its insurance contract, including all consequential damages, recoverable attorney fees, and costs sustained as a result of Defendant CMIC's breach of contract;

c) An award of compensatory damages against Defendant CMIC in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with Defendant CMIC's bad faith and its breach of its common-law duty of good faith and fair dealing to Plaintiff, including all damages, attorney fees and costs, and net economic losses sustained by the Plaintiff as a result of Defendant CMIC's bad faith;

d) An award of compensatory damages against the CMIC Defendants in an amount in excess of this Court's jurisdictional limits, as proven by the evidence at trial, in connection with the CMIC Defendants' violation of the Unfair Trade Practices Act as a business practice in the handling of Plaintiff's claims, including all consequential and resulting damages, attorney fees and costs and net economic losses sustained as a result of the CMIC Defendants' actions;

e) An award of punitive damages against Defendant CMIC in connection with its actual malice in engaging in bad faith and its breach of its common-law duty of good faith and fair dealing to Plaintiff in connection with its handling of Plaintiff's claim;

f) An award of punitive damages against the CMIC Defendants in connection with their actual malice in violating the Unfair Trade Practices Act as a business practice in the handling of Plaintiff's claim;

g) An award of pre-judgment and post-judgment interest, costs, and attorney fees; and

h) Such further and additional relief as the Court and/or the Jury determines to be just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**ELMWOOD MISSIONARY
BAPTIST CHURCH**

**By counsel,**

*/s/ Brent K. Kesner*
Brent K. Kesner (WVSB #2022)
Anthony E. Nortz (WVSB #12944)
Kevin C. Kidd (WVSB #13642)
**Kesner & Kesner, PLLC**
112 Capitol Street (25301)
P. O. Box 2587
Charleston, WV   25329
*Phone:* (304) 345-5200
*Fax:*    (304) 345-5265
bkesner@kesnerlaw.com
anortz@kesnerlaw.com
kkidd@kesnerlaw.com



West Virginia E-Filing Notice

CC-20-2025-C-1378

Judge: Maryclaire Akers

**To:** Brent Kesner
bkesner@kesnerlaw.com

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

Elmwood Missionary Baptist Church v. Church Mutual Insurance Company, S.I. c/o Corporation Service Company

CC-20-2025-C-1378

The following complaintwas FILED on 11/18/2025 2:56:08 PM

Notice Date:    11/18/2025 2:56:08 PM

Cathy S. Gatson

CLERK OF THE CIRCUIT COURT

Kanawha County

P.O. Box 2351

CHARLESTON, WV 25301

(304) 357-0440

## COVER SHEET

E-FILED | 11/18/2025 2:56 PM
CC-20-2025-C-1378
Kanawha County Circuit Clerk
Cathy S. Gatson

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF KANAWHA COUNTY WEST VIRGINIA

**Elmwood Missionary Baptist Church v. Church Mutual Insurance Company, S.I. c/o Corporation Service Company**

**First Plaintiff:**  ☐ Business  ☐ Individual  **First Defendant:**  ☑ Business  ☐ Individual
  ☐ Government  ☑ Other    ☐ Government  ☐ Other

**Judge:**    Maryclaire Akers

## COMPLAINT INFORMATION

**Case Type:**  Civil          **Complaint Type:**  Other

**Origin:**      ☑ Initial Filing  ☐ Appeal from Municipal Court  ☐ Appeal from Magistrate Court

**Jury Trial Requested:**    ☑ Yes  ☐ No    **Case will be ready for trial by:**  11/18/2026

**Mediation Requested:**    ☐ Yes  ☑ No

**Substantial Hardship Requested:** ☐ Yes  ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

  ☐ Wheelchair accessible hearing room and other facilities

  ☐ Interpreter or other auxiliary aid for the hearing impaired

  ☐ Reader or other auxiliary aid for the visually impaired

  ☐ Spokesperson or other auxiliary aid for the speech impaired

  ☐ Other:

☐ I am proceeding without an attorney

☑ I have an attorney:  Brent Kesner, PO Box 2587 , Charleston, WV 25329

## SERVED PARTIES

**Name:**  Church Mutual Insurance Company, S.I. c/o Corporation Service Company

**Address:**  808 Greenbrier Street, Charleston WV 25311

**Days to Answer:** 30          **Type of Service:** Filer - Secretary of State

**Name:**  Mitchell Kies

**Address:**  19 Sonata Circle, Wimberley TX 78676

**Days to Answer:** 30          **Type of Service:** Filer - Secretary of State